## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNATHAN M. PROCTOR, | : | Civil No. 1:21-CV-00323 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT MARSH, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a petition for habeas corpus pursuant to 28 U.S.C. § 2254 filed by Johnathan M. Proctor.  (Doc. 1.)  For the reasons set forth below, the court will dismiss the petition.

### PROCEDURAL HISTORY

Johnathan M. Proctor ("Petitioner") is a self-represented litigant who filed a petition for writ of habeas corpus seeking relief from his state court judgment in February of 2021.  (Doc. 1.)  The factual history of Petitioner's state criminal conviction is summarized in the memorandum entered by the Pennsylvania Superior Court on August 26, 2020 and reproduced here with Petitioner identified as the "Appellant":

> On September 30, 2015, Appellant was convicted by a jury for his role in the overdose death of Daniel Lowe (Lowe). The Commonwealth's evidence at trial was that on October 26, 2012, Lowe and his girlfriend, Dakota Woodard (Woodard), went with Appellant to buy heroin from Brian Pierce (Pierce).  The three left together from Galeton Borough, Potter County, and drove to Pierce's trailer in Westfield Borough,

Tioga County.  When they arrived, Appellant got out and went in the trailer. Inside a bathroom, Appellant bought five bags of heroin from Pierce.  Appellant got back in the car and gave three of the bags to Lowe.  Lowe then drove to a nearby dirt road.  Using a syringe, Lowe injected Woodard with heroin while Appellant did the same to himself in the backseat.  Lowe then injected himself.

Because neither Lowe nor Woodard were able to drive, Appellant drove the car back to Potter County.  When they returned, Woodard discovered that Lowe, who was seated in the backseat, was unresponsive.  Woodard rushed to get help from a friend, who then called 911.  Because he had a bench warrant for his arrest, Appellant fled on foot before the ambulance arrived.  Lowe was taken to a nearby hospital and pronounced dead of a drug overdose.

A few days later, on October 31, 2012, Appellant gave a voluntary statement to the police.  In his statement, he admitted that Lowe contacted him about getting heroin and that he went with Lowe and Woodard to Pierce's to get the heroin.  He denied, however, that he bought the heroin, instead claiming that Pierce walked to the car and gave the heroin to Woodard, who then gave it to Lowe.

At trial, Woodard testified that Appellant gave the heroin to Lowe while Pierce admitted that he sold the heroin to Appellant.  Both denied that they were testifying as part of any agreement to receive favorable treatment, with Woodard acknowledging that she had related charges pending.  Additionally, the Commonwealth presented Kaitlyn Piquadio.  She testified that Appellant admitted to her that he gave the heroin to Lowe.  According to her, Appellant also admitted that he was trying to get Pierce to testify that he sold the heroin to Woodard.  Pierce confirmed the attempted fabrication during his direct examination.

*Commonwealth v. Procter*, 240 A.3d 203, 2020 WL 5036438, at *1 (Pa. Super. 2020).

A jury convicted Petitioner of drug delivery resulting in death, flight to avoid apprehension, delivery of a controlled substance, simple possession,

conspiracy to commit simple possession and possession of drug paraphernalia. *Id*. Petitioner was sentenced to an aggregate term of 12 years and 10 months to 26 years and 10 months of imprisonment. *Id*. His post-sentence motions were denied, and he filed a direct appeal with the Superior Court of Pennsylvania. *Id*. His judgment of sentence was affirmed on February 9, 2017, and the Pennsylvania Supreme Court denied allowance of an appeal on October 10, 2017. *Commonwealth v. Proctor,* 156 A.3d 261(Pa. Super. 2017), *appeal denied*, 172 A.3d 592 (Pa. 2017).

Petitioner filed a Post Conviction Relief Act ("PCRA") petition on November 13, 2017, raising two claims of ineffective assistance of counsel based on: (1) trial counsel not challenging the admissibility of the forensic toxicologist's determination of death; and (2) direct appellate counsel not preserving Petitioner's sufficiency of evidence claims. *Commonwealth v. Procter*, 240 A.3d 203, 2020 WL 5036438, at *2. Before any hearing took place, PCRA counsel filed a petition for leave to withdraw with a *Turner/Finley* no merit letter. *Id*. In response to the PCRA court's Rule 907 notice, Petitioner argued that his PCRA counsel failed to raise additional claims of trial counsel ineffective assistance that were not included in his initial petition, including: (1) that trial counsel failed to request a corrupt and polluted source jury instruction for either Woodard or Pierce; (2) that trial counsel failed to raise a *Brady* violation based on the Commonwealth's failure to disclose

3

Pierce's pending charges; and (3) that trial counsel failed to request a bill of particulars. *Id*., at *3. The PCRA court dismissed the petition without a hearing and granted PCRA counsel's request to withdraw on December 31, 2019. *Id*. Petitioner appealed, and the Superior Court of Pennsylvania considered the three ineffective assistance claims Petitioner raised in response to the court's Rule 907 notice. *Id*., at *3–8. The Superior Court affirmed the PCRA court's dismissal. *Id*.

In response, Petitioner filed the instant petition for writ of habeas corpus under 18 U.S.C. § 2254 raising four issues: (1) the sufficiency of the evidence claim; (2) the *Brady* claim; (3) ineffective assistance of trial counsel; and (4) prosecutor misconduct. (Doc. 1.) Respondents filed a response on July 30, 2021. (Doc. 23.) Petitioner did not file a traverse. The petition is now ripe for this court to address.

## VENUE

Under 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus under Section 2254 can be filed in either the district where the petitioner is in custody, or in the district where the petitioner was convicted and sentenced. 28 U.S.C. § 2241(d). Petitioner was convicted and sentenced in Potter County, Pennsylvania, which is located in this district. Therefore, venue in this district is proper.

### STANDARD OF REVIEW

Habeas corpus is an " 'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism. *See Engle v. Isaac*, 456 U.S. 107 (1982).  "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.*  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a).  If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

DISCUSSION

## A. The Sufficiency of the Evidence and the *Brady* Claims Will be Dismissed.

The court must first determine whether the grounds for relief presented in Petitioner's § 2254 petition have been exhausted in the state courts and, if not, whether circumstances exist to excuse Petitioner's procedural default of his claims.

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus unless the petitioner has satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b). Under § 2254(c), a petitioner will not be deemed to have exhausted his available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, (1999). A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings. *See id.* at 845. In addition, a claim is exhausted when it has been "fairly presented" to the state court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). To that end, the federal habeas claim "must be the substantial equivalent of that presented to the state courts." *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). The petition must do so "in a manner

6

that puts [the respondents] on notice that a federal claim is being asserted." *See Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005). "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to find material' that indicates the presence of a federal claim." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014) (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). Moreover, a habeas corpus petitioner has the burden of proving the exhaustion of all available state remedies. *See* 28 U.S.C. § 2254. Overall, the exhaustion requirement advances the goals of comity and federalism, while reducing "piecemeal litigation." *See Duncan v. Walker*, 533 U.S. 167, 180 (2001).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is an absence of available State corrective process." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). Claims deemed exhausted because of a state procedural bar are considered to be procedurally defaulted. *See, e.g.*, *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). The district court then analyzes the claims under the procedural default doctrine. *See id.* The purpose of this rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

### 1. Sufficiency of the Evidence

Petitioner argues that the state court erred by failing to rule on the merits of his sufficiency of the evidence claim.  (Doc. 1, pp. 9–13.)  Specifically, the sufficiency of the evidence claim he is referring to is his claim that the evidence failed to demonstrate that he had reckless disregard for the likelihood of Lowe's death or that Lowe's death was reasonably foreseeable.  (*Id*, pp. 11–12.)  However, upon review of the docket and state court rulings, the court finds that this specific sufficiency of the evidence claim focusing on Petitioner's *mens rea* is procedurally defaulted.

On January 22, 2016, Petitioner filed a notice of appeal to the Superior Court of Pennsylvania.  *Commonwealth v. Proctor*, 156 A.3d at 265.  On January 26, 2016, the trial court directed Petitioner to file a concise statement of errors complaint of on appeal pursuant to Pa.R.A.P 1925(b).  *Id.*  Petitioner complied and raised multiple issues for consideration, but the only ones addressing the sufficiency of the evidence were the following:

> 3. Was [Petitioner's] conviction for drug delivery resulting in death against the weight of the evidence because the cause of [Lowe's] death was combined drug toxicity?
>
> 4. Did the Commonwealth present insufficient evidence to support [Petitioner's] conviction for drug delivery resulting in death because the cause of [Lowe's] death was combined drug toxicity?

*Id*. at 266 *citing* Petitioner's Rule 1925(b) Statement, 4/25/2016, at 2.  Therefore, the issues raised in the Rule 1925(b) statement both addressed the sufficiency of the evidence as to the factual cause of death, not as to the *mens rea*.  As such, the state court found that Petitioner had waived the issue of *mens rea* on appeal. *Commonwealth v. Proctor*, 156 A.3d at 267.

In Pennsylvania, "[w]here a defendant is ordered to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and fails to raise a particular matter within that statement, the defendant is deemed to have waived that point of error on appeal." *Burnam v. Capozza*, No. 20-CV-1800, 2020 WL 7130600, at *15 (W.D. Pa. Dec. 4, 2020) (citations omitted).  The Third Circuit, and federal district courts in this Circuit, have held that waiver of an issue for failure to comply with Pennsylvania Rule 1925(b) is an independent and adequate state ground that bars habeas review under *Coleman*.  *See Buck v. Colleran*, 115 F. App'x 526, 528 (3d Cir. 2004); *Brown v. Bickell*, 2015 WL 1874220, at *24-25 (E.D. Pa. 2015) (citing cases).  Therefore, the claim is procedurally defaulted.

The court notes that Petitioner argues that the claim cannot be procedurally defaulted because not all the state appellate courts refused to review the claim on the merits.  (Doc. 1, p. 10.)  However, Petitioner failed to raise the issue in the appeal from the denial of his PCRA petition.  (Doc. 23, p. 46.)  A petitioner

attempting to reserve his right to bring a claim under § 2254 by failing to raise it in that state court appeal flies in the face of the purpose of the procedural default rule under *Coleman*: to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court.  501 U.S. at 732.  Therefore, this argument fails.

### 2. *Brady*

Petitioner also attempts to bring a claim under *Brady v. Maryland*, 373 U.S. 83 (1963) by asserting that the Commonwealth failed to disclose that Pierce, a witness for the Commonwealth, had an outstanding criminal matter in Potter County, the same county in which Petitioner was prosecuted.  (Doc. 1, p. 22.) Petitioner asserts this was evidence he could have used to impeach the witness, but that the evidence was not produced, resulting in a "verdict not worthy of confidence.  (Doc. 1, p. 25.)  However, this claim is unexhausted.

"Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment."  *Smith v. Cain*, 565 U.S. 73, 75 (2012) (citing *Brady*, 373 U.S. at 87).  To prove a *Brady* violation, a defendant must show the evidence at issues meets the following three "critical" elements:  "First, the evidence 'must be favorable to the accused, either because it is exculpatory, or because it is impeaching.' . . . Second, it 'must have been suppressed by the State, either

willfully or inadvertently.' . . . Third, the evidence must have been material such that prejudice resulted from its suppression." *See Dennis v. Sec'y Penn. Dep't of Corr.*, 834 F.3d 263, 284–85 (3d Cir. 2016) (en banc) (quoting *Strickler v. Green*, 527 U.S. 263, 281–82 (1999)).  Evidence is "material" for *Brady* purposes "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *See Smith*, 565 U.S. at 75.  "A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[ ] confidence in the outcome of the trial.'" *Id*. (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

The court recognizes that Petitioner raised the issue of *Brady* in response to the PCRA court's Rule 907 notice under the framework of PCRA counsel's failure to raise the issue of ineffective assistance of trial counsel by trial counsel's failure to raise a *Brady* violation. *See Commonwealth v. Procter*, 240 A.3d 203, 2020 WL 5036438, at *3.  Therefore, Petitioner's state claim was an ineffective assistance of counsel claim, and not a *Brady* claim.

The Third Circuit has held that federal review is foreclosed when the state court addresses the merits of a federal claim only in the course of resolving another, independent claim. *Sistrunk v. Vaughn*, 96 F.3d 666, 675 (3d Cir. 1996). Therefore, even if the state court addressed the *Brady* claim on its merits, since it

was addressed as a means to resolve an ineffective assistance of counsel claim, it has not been exhausted.  Therefore, this claim is unexhausted and will be dismissed.

### B.  Petitioner's Claims Ineffective Assistance of Counsel Will Be Dismissed.

Petitioner also raises an argument of ineffective assistance of counsel based on two alleged errors by trial counsel: (1) the failure to request a corrupt and polluted source jury instruction; and (2) the failure to request a bill of particulars. (Doc. 1.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend VI.  The purpose of the right to the assistance of counsel is to ensure a fair trial, and "the Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'"  *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.*  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."  *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).  The clearly

established federal law as to an ineffective assistance of counsel claim is

*Strickland*, which sets forth the following two-prong analysis.

Under the first prong of *Strickland*, the petitioner must establish that

counsel's performance was deficient.  466 U.S. at 687.  "*Strickland's* first prong

sets a high bar."  *Buck v. Davis*, 137 S. Ct. 759, 775 (2017).  To establish that

counsel's performance was deficient, the petitioner must establish that "counsel's

representation fell below an objective standard of reasonableness."  *Strickland*, 466

U.S. at 688.  "Judicial scrutiny of counsel's performance must be highly

deferential."  *Id.* at 689.  As such, the court "must apply a 'strong presumption'

that counsel's representation was within the 'wide range' of reasonable

professional assistance,"  *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting

*Strickland*, 466 U.S. at 689), and "[t]o overcome that presumption, a defendant

must show that counsel failed to act 'reasonabl[y] considering all the

circumstances[,]'"  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting

*Strickland*, 466 U.S. at 688).  "The challenger's burden is to show 'that counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed

the defendant by the Sixth Amendment.'"  *Harrington*, 562 U.S. at 104 (quoting

*Strickland*, 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish

prejudice.  *Strickland*, 466 U.S. at 687.  To do so, the petitioner must show a

reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The petitioner "need not prove that the evidence would have been insufficient if not for counsel's errors . . . [or] 'that counsel's deficient conduct more likely than not altered the outcome.'" *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 588 (3d Cir. 2015) (quoting *Strickland*, 466 U.S. at 693). Rather, the issue is whether there is a reasonable probability of a different result. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Harrington*, 562 U.S. at 112).

To prevail on an ineffective-assistance claim, a petitioner must satisfy both prongs of *Strickland*. A court can choose which prong of the standard to apply first, and it may reject an ineffectiveness claim on the ground that the petitioner was not prejudiced without addressing whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Premo v. Moore*, 562 U.S. 115, 122 (2011). And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."

14

*Harrington*, 562 U.S. at 105.  When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'"  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*

### 1.  Corrupt and Polluted Source Jury Instruction

Petitioner alleges that trial counsel was ineffective for failing to request a corrupt and polluted source jury instruction at trial.  (Doc. 1, pp. 13– 17.)  At the trial, Pierce and Woodard testified as witnesses against Petitioner.  Yet, Petitioner's counsel failed to request a corrupt and polluted source jury instruction as to the testimony of Pierce and Woodard.  The state court found that although Petitioner was entitled to the instruction at trial, he suffered no prejudice as a result of his counsel's failure to request it because:

> At trial, Woodard acknowledged that she had related charges pending and was asked whether any promises had been made to her for testifying.  N.T., 9/28/15 at 33, 126.  Likewise, Pierce was asked if his testimony was influenced by his potential criminal liability for his role in Lowe's death.  *Id.* at 143.  Trial counsel followed up with Woodard on her charges, asking her if she had been promised anything for her testimony.  *Id.* at 105-06.  Then, during his closing statement, trial counsel argued that Woodward was lying in part to avoid criminal

liability.  N.T., 9/30/15, at 589 ("If the facts fall the other way, she could be on the hook for this exact event."), 597 ("[Woodard] knew if she didn't come up with a better story she was on the line for this.").  The jury was, therefore, apprised that Woodard's and Pierce's testimony was potentially influenced by their roles in Lowe's death and their potential criminal liability.

With the jury aware of their interests in testifying for the Commonwealth, the trial court gave general instructions about how to assess the witnesses' testimony, including, as noted in the PCRA court's opinion, to consider whether they had any interest in the outcome of the case.  Under similar circumstances, our Supreme Court has found that a PCRA petitioner is not prejudiced by trial counsel's failure to seek and obtain a corrupt and polluted source jury instruction. *See Commonwealth v. Wholaver*, 177 A.3d 136, 166 (Pa. 2018) (finding no prejudice for failing to request accomplice instruction where jury was apprised of witnesses' plea agreements and trial court provided general instructions for assessing witnesses' credibility); *see also Commonwealth v. Smith*, 17 A.3d 873, 904-07 (Pa. 2011) (finding the same).

Moreover, the PCRA court found that the Commonwealth presented overwhelming evidence that Appellant gave the heroin to Lowe. Besides Woodard's direct eyewitness testimony, the Commonwealth presented evidence that Appellant not only admitted to a friend that he gave the heroin to Lowe, but also that he was attempting to get Pierce to testify that he initially gave the heroin to Woodard. N.T., 9/28/15, at 180-81 (testimony of Kaitlyn Piquadio). Pierce corroborated the attempted fabrication at trial, testifying that Appellant asked him to give a different version of what happened. *Id*. at 142.  Additionally, whether Pierce gave the heroin to Appellant or Woodard would not change his potential accomplice liability, thus weakening Appellant's claim that Pierce was lying in order to avoid criminal liability.  Accordingly, in light of all this evidence, together with the trial court's general instructions on witness credibility, the PCRA court did not err in finding Appellant's claim as not warranting relief.

*Commonwealth v. Procter*, 240 A.3d 203, 2020 WL 5036438, at \*5–6.

The standard established in *Strickland* for prejudice is whether there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different.  466 U.S. at 694.  The Supreme Court has made clear this different result means a different sentence.  *Porter v. McCollum*, 558 U.S. 30, 41 (2009).

Petitioner asserts that the state court has already established that trial counsel's performance was below the objectively reasonable standard, and that he was prejudiced as his conviction "stems from the primary testimony of Woodard and Pierce."  (Doc. 1, p. 17.)  He asserts that in the absence of their testimony, the proceedings would have been different.  (*Id*.)  However, as the state court has pointed out, there was the testimony of Kaitlyn Piquadio that Appellant admitted to her that he had gave the heroin to Lowe.  Based on this separate evidence in addition to the fact that the jury was aware that Woodard and Peirce also faced criminal liability, the court finds that the state court's application of *Strickland* was not unreasonable.

### 2.  Bill of Particulars

Petitioner alleges that trial counsel was ineffective for failing to request a bill of particulars.  (Doc. 1, pp. 27–28.)  He asserts that such a document would have limited the prosecution to a single theory regarding the actual cause of death

17

as the coroner who originally performed the autopsy on Lowe listed his death as an

accident, but the prosecution obtained a second opinion from Michael Coyer who

listed the death as a homicide.  (*Id*.)

> When presented with this issue, the PCRA court addressed it as follows:
>
> [Appellant] argues that the failure of trial counsel to request a Bill of
> Particulars allowed the Commonwealth to present multiple theories as
> to how the victim died. The Court finds no merit to [Appellant's] claim.
> The Affidavit of Probable Cause recites that the arresting officer, Chief
> Brackman, spoke with forensic pathologist, Dr. Michael Coyer who
> confirmed that the victim died as a result of heroin overdose. The
> Commonwealth's Information specifically states that [Appellant] was
> charged with distributing heroin which resulted in the death of Lowe.
> At trial the Court heard no other theory espoused by the Commonwealth
> or its witnesses other than [Appellant] provided heroin to Lowe who
> died as a result of the injection of same. Accordingly, the Court
> determines that the failure to request a Bill of Particulars by trial
> counsel would not have affected the outcome of the trial.

*Commonwealth v. Procter*, 240 A.3d 203, 2020 WL 5036438, at *7–8 (citing the

PCRA court's February 18, 2020 opinion).  This ruling was upheld on appeal in

state court.  *Id*.

In his current petition, Petitioner cannot identify how he was prejudiced by

the failure to request or receive a bill of particulars.  Instead, he made another

assertion that multiple causes of death increased the likelihood of his conviction:

"Proctor was prejudiced by counsel's deficient performance as the prosecution was

able to present multiple theories rending the ability to convict[] more substantial

than the ability to obtain acquittal."  (Doc. 1, pp. 17–28.)  Despite these assertions,

Petitioner's trial counsel centered his defense on the cause of death including hiring an expert witness.  (Doc. 23, pp. 105–06 Petitioner's summary testimony from Dr. William Manion on appeal.)  Therefore, Petitioner's assertion that his trial counsel was not able to mount a proper defense because the issue of cause of death was not brought up in a bill of particulars is not meritorious.  As trial counsel had sufficient notice to have an expert witness for trail, there is no support for the notion that he was unaware or unprepared to address the issue at trial.

### C. Petitioner's Claim of Prosecutorial Misconduct Will Be Dismissed.

Petitioner alleges that the trial court improperly denied a mistrial after the prosecutor commented on his lack of remorse during the closing statements, arguing that this constitutes a Fifth Amendment violation under *Griffin v. California*, 380 U.S. 609 (1965).  (Doc. 1, pp. 17–22.)

The Fifth Amendment, made applicable to the states by the Fourteenth Amendment, provides in relevant part that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself."  U.S. Const. amend V.  The Fifth Amendment prohibits a prosecutor from suggesting to the jury that "it may treat the defendant's silence as substantive evidence of guilt."  *United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 869 (1988) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976) ); *see also Griffin*, 380 U.S. at 614.  Although the Fifth Amendment "forbids either comment by the prosecution on the accused's silence

or instructions by the court that such silence is evidence of guilt," *Griffin*, 380

U.S. at 615, the "central purpose of a criminal trial is to decide the factual question

of the defendant's guilt or innocence." *Delaware v. Van Arsdall*, 475 U.S. 673,

681 (1986) *citing United States v. Nobles*, 422 U.S. 225, 230 (1975).  "[B]oth the

defendant and the prosecutor have the opportunity to meet fairly the evidence and

arguments of one another.  The broad dicta in *Griffin* to the effect that the Fifth

Amendment "forbids . . . comment by the prosecution on the accused's silence,"

380 U.S. at 615, must be taken in the light of the facts of that case.  It is one thing

to hold . . . that the prosecutor may not treat a defendant's exercise of his right to

remain silent at trial as substantive evidence of guilt; it is quite another to urge . . .

that the same reasoning would prohibit the prosecutor from fairly responding to an

argument of the defendant by adverting to that silence." *Robinson*, 485 U.S. at 33.

In opining that "[t]here may be some 'cost' to the defendant in having remained

silent in each situation," the Supreme Court declined to expand *Griffin* to preclude

a fair response by the prosecutor to comments or arguments made by defense

counsel. *Id.*

At the trial, the prosecutor stated in his closing argument: "I'll leave you one

last thought.  Have any of you during the facts of this case or observing the

defendant these last 3 days have any of you seen one ounce of remorse?"  (Doc.

23, p. 88.)  Petitioner's trial counsel then requested a mistrial based on the

prosecutor's comment.  (*Id*., pp. 88–90.)  The trial court refused a mistrial, but did

provide the following instruction to the jury:

> [a] person accused of a crime is not required to present any evidence or
> to prove anything in his own defense. He doesn't have to call any
> witnesses. Any reference that he didn't call a witness is immaterial to
> your consideration. You are not to give any thought as to or any
> inference as to whether he didn't call any witnesses, that is [not] his
> responsibility. His responsibility is to not present anything in his own
> defense if he so wishes.

(*Id*., p. 91.)  The trial court also instructed that closing arguments are not evidence.

*See Commonwealth v. Proctor*, 156 A.3d at 272 (citing page 585 of the trial

transcript, which was not provided to this court.)  Additionally, the jurors were told

that they "should not base [their] decision on which attorney made the better

speech or which attorney [they] like better that should not play any part in [their]

decision." (Doc. 23, p. 90.)

Petitioner raised this challenge in his initial direct appeal, and the state court

found that the jury instructions provided at the trial adequately cured any ill effect

from the prosecutor's comment.  *Commonwealth v. Proctor*, 156 A.3d at 272.  This

court agrees.  The Supreme Court has repeatedly held that a defendant exercising

his right to remain silent cannot be held out to the jury as substantial evidence of

guilt.  *Robinson*, 485 U.S. at 33.  However, the statements made at Petitioner's trial

were not that his refusal to speak was evidence of his guilt, but that he appeared to

lack remorse.  While this comment was not proper, the trial court gave repeated

instructions to the jury to remedy any ill effect this comment may have caused by reminding the jury repeatedly that his failure to testify was not evidence of guilt.

### A. A Certificate of Appealability Will Not Be Issued.

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 237.  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, no COA will be issued.

## CONCLUSION

For the reasons set forth above, the court will dismiss the petition for writ of habeas corpus.

A separate order will be issued.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: May 26, 2023